**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TINA GRANT, individually  and on<br>behalf of all others similarly situated | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO: 4:16-cv-00696 |
| | ) | |
| v. | ) | Judge Catherine D. Perry |
| | ) | |
| EQUIFAX WORKFORCE SOLUTIONS a/k/a<br>TALX CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| BETZALEL YOCHANAN, individually  and on<br>behalf of all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO: 4:16-cv-00843 |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX WORKFORCE SOLUTIONS a/k/a<br>TALX CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT EQUIFAX WORKFORCE SOLUTIONS'**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Equifax Workforce Solutions ("EWS") provides its W-2 eXpress service to The Kroger

Company ("Kroger"), which permits Kroger employees to access and view their W-2

information online.  During the 2015 tax year, unidentified criminals accessed the W-2

information of a number of Kroger employees using the default log-in information of those

Kroger employees.  Within thirteen days following Kroger's announcement of this unauthorized

access, and despite having no evidence of any unauthorized access to their own W-2 information

and no actual injuries, two Kroger employees, Plaintiffs Tina Grant and Betzalel Yochanan, filed

putative class action complaints against EWS.  Those complaints were consolidated into this single lawsuit, which EWS now moves to dismiss in its entirety.

*First*, dismissal with prejudice is appropriate because Plaintiffs do not have standing to sue under Article III of the U.S. Constitution, a conclusion that is clear under recent authority from both this Court and the U.S. Supreme Court.  Neither Grant nor Yochanan specifically alleges that their own W-2 information was stolen or even inappropriately accessed.  And, despite numerous allegations of hypothetical harm that individuals, including Plaintiffs, *may* suffer one day, Plaintiffs fail to allege a single, concrete injury that they actually suffered or will suffer imminently.  This Court has consistently rejected these types of hypothetical injuries as insufficient to establish standing, including in a recent data breach case in which the plaintiffs specifically alleged that their information was stolen.  *See Duqum v. Scottrade, Inc.*, 4:15-cv-01537-SPM, ECF No. 79 (E.D. Mo. July 12, 2016), attached as **Exhibit A**.  Here, Plaintiffs' allegations fall even shorter.  They do not specifically allege their information was stolen or any actual or imminent injury, much less one fairly traceable to EWS' conduct.  As in *Scottrade*, this Court should dismiss Plaintiffs' Complaints.

*Second*, in the alternative, dismissal is appropriate because the two claims in the *Grant* Complaint and the five claims in the *Yochanan* Complaint are legally insufficient on their face for the following reasons:

- The negligence claims in both Complaints are barred by the economic loss rule;

- In addition to not identifying any actual injury, the negligence claims do not identify any duty that EWS owed Plaintiffs, who are Kroger employees and who have no contractual relationship with EWS;

- The unjust enrichment claims do not allege any benefit that was directly conferred on EWS by Plaintiffs;

- Yochanan's claim under the Georgia data breach notification statute fails because it does not provide a private cause of action; and

- Yochanan's demands for declaratory and injunctive relief fail because they are duplicative and inconsistent with the remaining claims in his Complaint and seek relief for alleged past wrongs.

## FACTUAL AND PROCEDURAL BACKGROUND

EWS provides various human resources, payroll, tax management, and compliance products and services such as W-2 eXpress to Kroger. *See Grant* Compl. ¶ 1; *Yochanan* Compl. ¶ 1.[1] On May 5, 2016, Kroger informed its employees that criminals gained access to W-2 eXpress information for certain Kroger employees by using the default log-in for those employees. *Grant* Compl. at ¶¶ 2, 9, 40 (Kroger stated that "[w]e believe individuals gained access to *some* Kroger associates' electronic W-2 forms") (emphasis added); *see also Yochanan* Compl. ¶¶ 1, 14. The W-2 information purportedly included employees' full names, addresses, zip codes, dates of birth, wages, and Social Security numbers. *Grant* Compl. ¶ 2. Kroger has stated that the default log-in information was "likely 'obtained from some other source'" (*Grant* Compl. ¶ 12), and Plaintiffs have not alleged that the information was obtained from EWS.

Just two weeks later, on May 18, 2016, Plaintiff Tina Grant filed a putative class action complaint in this Court against EWS, alleging that EWS failed to implement sufficient security

---

[1] As is required for this Motion to Dismiss, EWS treats the specific factual allegations of the Complaints as true. *Wolfchild v. Redwood Cnty.*, Nos. 15-1580, 15-2375, 15-3225, 15-3277, 2016 WL 3082341, at *2 (8th Cir. June 1, 2016). EWS, however, denies any wrongdoing and will challenge the veracity of specific allegations if the litigation proceeds beyond the motion to dismiss stage.

measures to protect employee information and bringing claims for negligence and unjust

enrichment.  *See generally Grant* Compl.  Shortly afterward, on May 24, 2016, Plaintiff

Yochanan filed a similar putative class action complaint against EWS in the Northern District of

Georgia, which Yochanan subsequently dismissed without prejudice and refiled in this Court.

Plaintiff Yochanan's current Complaint contains similar conclusory allegations and brings claims

for negligence, unjust enrichment, negligence *per se*, declaratory and injunctive relief, and a

claim under the Georgia data breach statute.  *See generally Yochanan* Compl.  Plaintiffs do not

allege that any unauthorized access to W-2 information was the result of, for example, a phishing

incident or a hack of the W-2 eXpress computer systems.  Moreover, while alleging that only

*some* Kroger employee W-2 information was accessed without authorization, Plaintiffs do not

specifically allege that *their* W-2 information was accessed on W-2 eXpress without

authorization.

     Shortly after Plaintiffs initially filed their lawsuits, on approximately May 27, 2016,

Kroger stated that it had notified 13,000 current and former employees of potentially suspicious

activity involving their W-2 information, but that the number of affected individuals is less than

13,000.[2]  In the Complaint Plaintiff Yochanan filed in this Court on June 14, 2016, he fails to

mention that Kroger has stated that the universe of potentially affected individuals is less than

13,000, and does not allege that he is within the group of 13,000.  Nor has Plaintiff Grant

amended her Complaint to allege that she is within that group.

     On July 8, 2016, this Court consolidated the *Grant* and *Yochanan* Complaints on the

parties' joint motion.  *See* ECF No. 17.  As described further below, the *Grant* and *Yochanan*

---

[2] *See* http://www.ajc.com/news/business/equifax-sued-over-theft-of-kroger-workers-info/nrWRk/.  *See also Barron v. South Dakota*, No. CIV 09-4111, 2010 WL 9524819, at *3 (D. S.D. Sept. 30, 2010) (courts may consider publications as evidence of what is in the public realm at the time).

Complaints list numerous injuries that the Plaintiffs or others *may* suffer at some point in the

future, but fail to allege any actual unauthorized access or any actual or imminent injuries.  As

described in detail below, none of these speculative and hypothetical injuries are sufficient to

establish standing and, in any event, all of the alleged claims are insufficient on their face.

## <u>LEGAL STANDARD</u>

EWS moves to dismiss the *Grant* and *Yochanan* Complaints for lack of subject-matter

jurisdiction.  Fed. R. Civ. P. 12(b)(1).  To survive a Rule 12(b)(1) motion to dismiss, Plaintiffs

must "'clearly . . . allege facts demonstrating' each element" of Article III standing.  *Spokeo, Inc.*

*v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Bray v. Bank of Am., N.A.*, No. 4:14-CV-1336-CEJ,

2016 WL 687818, at *2 (E.D. Mo. Feb. 19, 2016) ("The plaintiff bears the burden of establishing

standing."); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("Article III

requires 'an injury [to] be concrete, *particularized*, and *actual* or imminent.'") (quoting

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

In the alternative, EWS moves to dismiss the *Grant* and *Yochanan* Complaints for failure

to state a claim for relief.  Fed. R. Civ. P. 12(b)(6).  The Complaints must state "a claim to relief

that is plausible on its face," meaning the allegations must consist of more than "'labels and

conclusions,' . . . 'a formulaic recitation of the elements of a cause of action,' . . . or 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  A claim is facially plausible "'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2016 WL 3227676,

at *2 (E.D. Mo. June 13, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While

factual matter must be accepted as true, courts will not presume conclusory statements to be true." *Blue Buffalo*, 2016 WL 3227676, at *2.

## ARGUMENT

I.  **BECAUSE PLAINTIFFS FAIL TO SPECIFICALLY ALLEGE THEIR W-2 INFORMATION WAS STOLEN OR ANY ACTUAL INJURY, THEY LACK STANDING TO BRING THEIR CLAIMS.**

Plaintiffs filed their Complaints against EWS despite having no evidence or specific allegations that *their* W-2 information was actually accessed or stolen by third-party criminals. Instead, Plaintiffs rest their claims on alleged injuries that they and purported class members "may" suffer *if* their information was accessed, which is insufficient to establish the required concrete injury-in-fact to invoke standing in federal court.

### A.  Plaintiffs Fail to Specifically Allege Their W-2 Information Was Stolen.

Neither Plaintiff has specifically plead that their own W-2 information was accessed or stolen by third-party criminals.  The Complaints contain only general and conclusory allegations that W-2 information was "accessed" or "stolen" or "compromised," but neither Grant nor Yochanan specifically allege that their own W-2 information was accessed or stolen.  *See, e.g., Grant* Compl. ¶ 57; *Yochanan* Compl. ¶ 26.  Indeed, Plaintiff Grant concedes that her information only "*may*" have been compromised.  *Grant* Compl. ¶ 4.  Plaintiff Yochanan fails to even specifically plead *any* allegations that his information was or could have been compromised.

If Plaintiffs have no evidence that their own W-2 information was actually accessed or stolen, they were presumably not even affected by these criminals and certainly could not have suffered an injury that meets the constitutional requirements for Article III standing.  *Clapper v.*

*Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (a plaintiff must plausibly demonstrate that she has suffered an injury).

> **B.  Even if Plaintiffs Specifically Plead Their W-2 Information Was Stolen, Plaintiffs Fail to Plead An Injury-in-Fact.**

To establish Article III standing, a plaintiff must plausibly demonstrate that she has suffered an injury that is (1) "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Clapper*, 133 S. Ct. at 1147; *see also Spokeo*, 136 S. Ct. at 1547, 1549 ("Injury in fact is a constitutional requirement" that "requires a concrete injury even in the context of a statutory violation"). Plaintiffs fail to meet all three constitutional requirements, and each failure warrants dismissal of their claims.

> **1.  Plaintiffs Allege Only Speculative and Hypothetical Injuries.**

Throughout both Complaints, Plaintiffs allege various purported injuries, which can be broken down into three categories and all of which are insufficient to establish standing:  (1) hypothetical and speculative injuries that Plaintiffs might suffer in the future; (2) hypothetical and speculative harm that identity thieves might do to unspecified individuals in the future; and (3) hypothetical and speculative harm that would allegedly be suffered by "members of the class" in the future, but not by Plaintiffs themselves.

Even if Plaintiffs' W-2 information was accessed by criminals, which they do not specifically allege, none of these claimed injuries meet the constitutional requirement for an injury-in-fact to be "concrete, particularized, and actual or imminent." *Clapper*, 133 S. Ct. at 1147; *see also Wallace*, 747 F.3d at 1031 ("Time and again the Supreme Court has reminded lower courts that speculation and conjecture are not injuries cognizable under Article III.'").

*a.  Hypothetical and Speculative Injuries That Plaintiffs Might Suffer in the Future*

The Complaints allege various injuries that the Plaintiffs may suffer at an unknown point in the future or are at "risk" of suffering at some point in the future.  For example:

- Plaintiff now "face(s) a real and immediate risk of identity theft and other problems associated with the disclosure of [her] SSN, and will need to monitor [her] credit and tax filings for an indefinite duration."  *Grant* Compl. ¶ 37.

- Plaintiff has been "exposed to fraud and a heightened and imminent risk of fraud and identity theft"; Plaintiff "must now and in the future closely monitor" financial accounts, . . . "may be faced with fraudulent debt" or may "incur costs" for "protective measures."  *Grant* Compl. ¶ 41.

- Plaintiff has been "exposed to fraud, identity theft, and financial harm" and to "a substantial, heightened, and imminent risk of such harm in the future."  *Yochanan* Compl. ¶ 5.

- Plaintiff is subject to a "substantial, increased, concrete risk of identity theft."  *Yochanan* Compl. ¶ 24.

- "[E]xposure to a heightened, imminent risk of fraud, identity theft, and financial harm."  *Yochanan* Compl. ¶ 63.

None of these allegations amount to any injury suffered by Plaintiffs.  While an "imminent" injury may establish Article III standing, "it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending."  *Clapper*, 133 S. Ct. at 1147.  Simply labeling future injury as "imminent" does not make it so.  Plaintiffs' allegations that their information may have been compromised combined with their allegations that they "may" suffer or are "at risk" of suffering various future injuries are at best "'[a]llegations of *possible* future injury' [which] are not sufficient."  *Id.*

This Court has twice rejected such claimed injuries, finding them insufficient to establish an injury-in-fact.  In *Scottrade*, 4:15-cv-01537-SPM, ECF No. 79 (Ex. A), the plaintiffs alleged they suffered several categories of injury as a result of a data breach.  First, unlike here, the plaintiffs alleged that there was a hack into Scottrade's computer systems and their information

8

was actually stolen.  *Id.* at 2-3.  Second, this Court noted that the plaintiffs did not allege that any of the stolen personal information had actually "been used to commit any identity theft, fraud, or any other act that has resulted in harm to any plaintiff," and did not allege any facts that hackers intended to commit such acts.  *Id.* at 10.  Because it could not "determine whether Plaintiffs will suffer harm in the future without engaging in considerable speculation about the hackers' possible intentions and future actions," this Court held that such speculative allegations were insufficient to demonstrate an injury in fact.  *Id.* at 10-13.

Likewise, in *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1049 (E.D. Mo. 2009), the plaintiff alleged that he suffered several categories of injury as a result of a data breach.  Like Grant and Yochanan, the plaintiff did not claim that "his personal information [had] in fact been stolen and/or his identity compromised," but only that he "faces an increased risk of identity theft at an unknown point in the future."  *Id.* at 1052.  As a result, this Court held that the plaintiff's injuries were not "imminent" and thus not sufficient to establish standing.  *Id.* ("Where the timing and type of injury cannot be determined, such abstract injuries do not provide the injury-in-fact required for Article III standing").

As in both *Scottrade* and *Amburgy*, "many 'if's' would have to come to pass" for Plaintiffs to suffer any injuries, much less the injuries alleged here.  *Amburgy*, 671 F. Supp. 2d at 1053; *see also Scottrade*, at 10.  Plaintiffs Grant and Yochanan may suffer harm only *if* the criminals actually accessed their W-2 information; "*if* the [criminals] actually intend to use Plaintiffs' PII to commit identity theft, fraud, or some other act that might harm Plaintiffs; *if* the [criminals] attempt to use the PII to commit such identity theft, fraud, or other act; *if* they actually succeed in doing so; and *if* the identity theft, fraud, or other act causes harm to the Plaintiffs."  *Scottrade* at 10.  This "considerable speculation" and "multiple if's squarely place"

Plaintiffs' claimed injuries in the "realm of the hypothetical," and are insufficient to confer

standing. *Amburgy*, 671 F. Supp. 2d at 1053.

Further, Plaintiff Yochanan's allegation that he "enrolled in identity theft protection

services at a monthly cost to him of $9.99 per month," is insufficient to establish an injury-in-

fact. *Yochanan* Compl. ¶ 9.[3]  These expenses were incurred to prevent future harm, and

Yochanan "cannot manufacture standing merely by inflicting harm on [himself] based on [his]

fears of hypothetical future harm that is not certainly impending."  *Clapper*, 133 S. Ct. at 1151;

*see also Scottrade* at 14 ("[B]ecause the Court has already found that Plaintiffs' increased risk of

identity theft or fraud is [sic] does not constitute an imminent harm, the cost of monitoring for

that risk or mitigating that risk cannot constitute injury in fact."); *In re Barnes & Noble Pin Pad*

*Litig.*, No. 12-CV-8617, 2013 WL 4759588, at *4 (N.D. Ill. Sept. 3, 2013) (finding that

allegations of "actual injury in the form of time spent mitigating an increased risk of identity

theft or fraud is insufficient to establish standing").[4]

> **b.**  *Hypothetical and Speculative Harm That Identity Thieves Might Do To*
> *Unspecified Individuals in the Future*

The Complaints also allege various injuries that unidentified individuals may suffer at the

hands of unidentified "identity thieves."  For example:

- "Identity thieves can use the W-2 information . . . to perpetrate a wide variety of crimes."  *Grant* Compl. ¶ 31.

---

[3] Grant has not alleged that she is currently taking any measures to monitor her credit or incurring costs to do so.

[4] Nor do Plaintiffs' allegations of "diminution in value of [] personal information" constitute an injury in fact.  *See Grant* Compl. ¶ 42(f); *Yochanan* Compl. ¶ 63.  Plaintiffs do not allege any facts showing that their personal information was actually accessed or how their personal information is less valuable as a result of any such access.  This Court, like most courts, found such bare and hypothetical allegations insufficient to establish injury-in-fact.  *Scottrade* at 16-18.

- "[P]ermits identity thieves to commit other types of fraud including signing up for fraudulent credit cards and loan accounts, . . . types of government fraud, . . . [and] false insurance claims." *Grant* Compl. ¶ 33.

- "[V]ery strong probability that those impacted by the Data Breach could be at a risk of fraud and identity theft . . . ." *Grant* Compl. ¶ 40.

- "[I]dentity thieves can commit a variety of crimes that harm victims of the Data Breach." *Yochanan* Compl. ¶ 4.

- "Criminals frequently use Social Security numbers to create false bank accounts, file fraudulent tax returns, and incur credit in the victim's name." *Yochanan* Compl. ¶ 25.

But Plaintiffs do not allege that they, or any specific individuals, suffered these injuries.  Such vague allegations are a far cry from a "concrete, particularized, and actual or imminent" injury to establish standing.  *Clapper* 133 S. Ct. at 1147.  For an injury to be "particularized, it must affect the plaintiff in a personal and individual way." *Scottrade* at 5.  Plaintiffs' allegations are insufficient to establish an injury-in-fact.

> c.   *Hypothetical and Speculative Harm That Would Allegedly Be Suffered by "Members of the Class" in the Future, But Not by Plaintiffs Themselves.*

The Complaints' last category of purported injuries involves hypothetical future harm "suffered by members of the Class" (purported classes Plaintiffs cannot represent), including "[l]oss or delay of tax refunds," "[t]heft of [] valuable personal and [W-2] information," "[c]osts associated with time spent and the loss of productivity," "impairment of [] credit scores," and "loss of use of and access to their financial accounts and/or credit." *Grant* Compl. ¶ 42; *Yochanan* Compl. ¶ 26.  Nowhere in the Complaints do Plaintiffs allege that they suffered these claimed injuries or even provide an example of a putative class member that suffered them.  For class claims to proceed, the "district court must determine that at least one named class representative has Article III standing to raise each class" claim.  *Prado-Steiman ex. rel. Prado v.*

11

*Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also Brown v. Sibley*, 650 F.2d 760, 771 (5th

Cir. 1981) (a "named plaintiff cannot acquire standing to sue by bringing his action on behalf of

others who suffered injury which would have afforded them standing had they been named

plaintiffs").  Such vague allegations, without any allegation that Plaintiffs suffered the claimed

injuries, are insufficient.

The hypothetical and future injuries that "may" happen at some unknown date alleged by

Plaintiffs are exactly the type that courts, including this Court, have rejected repeatedly as

insufficient to support standing.

> **2.  Plaintiffs' Alleged Injuries Are Not Fairly Traceable To Any EWS Action.**

Even if Plaintiffs' W-2 information was actually accessed and stolen, which they have

not specifically alleged, any such access would be by third party criminals and not "fairly

traceable to the challenged action" of EWS.  *Clapper*, 133 S. Ct. at 1147.  Similarly, any

potential, future injuries would be fairly traceable, if they were to occur, to criminal actions by

third parties independent from EWS.  Courts should be reluctant "to endorse standing theories

that rest on speculation about the decisions of independent actors."  *Id.* at 1150.

Moreover, as described above, Plaintiffs' allegations depend on a "highly attenuated

chain of possibilities" and multiple "ifs."  *See supra* at Section I(B)(1).  Each of these

possibilities --- or "ifs" ---  would depend on an action taken by a third-party criminal that cannot

be traced to any action by EWS.  This "speculative chain of possibilities" does not satisfy the

traceability requirement.  *Clapper*, 133 S. Ct. at 1150; *In re:  Science Applications Int'l Corp.*

*(SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 31-32 (D. D.C. 2014) (holding that

plaintiffs' allegations that a breach made it more likely that criminals would steal personal

information did not plausibly allege that identity theft was fairly traceable to data breach); *Peters*

*v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015) (holding that allegations of identity theft did not meet the traceability requirement because the allegations "[f]ailed to account for the sufficient break in causation caused by opportunistic third parties").

### 3.  Plaintiffs' Claimed Injuries Are Not Redressable By A Favorable Ruling.

Plaintiffs also fail to establish the third requirement for standing, redressability.  *Clapper* 133 S. Ct. at 1147.  Should any of the alleged future injuries occur to Plaintiffs, each of those actions would have been taken by an independent third-party criminal.  The Court cannot control any damage or loss that may or may not occur by actions of these third parties who are not before the Court.  *Peters*, 74 F. Supp. 3d at 857 (holding that it "is not likely that a favorable decision from this Court would redress the harm" plaintiff has experienced when the court could not prevent third parties not before the Court from using the information nor could the court "otherwise disgorge them of her personal information" and the plaintiff failed to allege "any quantifiable damage or loss she has suffered as a result of the Data Breach").

### C.  Plaintiffs Lack Standing to Bring Their Class Claims.

Because Plaintiffs put forth no specific allegations that their W-2 information was actually accessed or stolen, not only do they lack Article III standing, Plaintiffs cannot represent the purported classes they allege in their Complaints.  Despite having no specific evidence or allegations of their information being accessed, Plaintiffs seek to represent classes of individuals whose W-2 information was, in fact, accessed by third-party criminals.  *See Grant* Compl. ¶ 43 (purporting to represent a nationwide class of employees whose personal information was "accessed by unauthorized individuals"); *Yochanan* Compl. ¶¶ 34-35 (purporting to represent nationwide and state sub-classes of "natural persons and entities" whose "personally identifiable information was acquired by unauthorized persons").

A plaintiff cannot represent a class unless it shows that it has standing to raise the claims of the class it seeks to represent.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks omitted); *Oetting v. Norton*, 795 F.3d 886, 890-92 (8th Cir. 2015) ("It is axiomatic that the lead plaintiff must fit the class definition" and dismissing complaint); *Chin v. General Mills, Inc.*, No. 12-2150 (MJD/TNL), 2013 WL 2420455, at *3 (D. Minn. June 3, 2013) ("The named plaintiffs in a class action may not rely on injuries that the putative class may have suffered, but instead must allege that they personally have been injured").  Because Plaintiffs have not pled any specific allegations regarding the unauthorized access or theft of their W-2 information, Plaintiffs are not members of the classes they purport to represent nor have they suffered the same alleged injuries those purported classes are alleged to have suffered.  As the Eighth Circuit made clear in *Oetting*, 795 F.3d at 892, "'if a case has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed.' . . . The court ha[s] no duty to save an uncertified class from [plaintiff's] failure to file a class action complaint" alleging proper standing.  Plaintiffs' class allegations must be dismissed.

## II.     PLAINTIFFS' NEGLIGENCE CLAIMS FAILS.

For three separate and independent reasons, Plaintiffs have failed to state their negligence or negligence *per se* claims:  (1) Plaintiffs' claims are barred by the economic loss rule; (2) Plaintiffs do not identify any duty EWS owed them, including as the result of a statutory violation that supports a negligence *per se* claim; and (3) Plaintiffs do not allege any actual injury recoverable under a theory of negligence.

### A.  Plaintiffs' Claims for Negligence and Negligence *Per Se* Are Barred By the Economic Loss Rule.

Plaintiffs assert tort claims for negligence and negligence *per se*, seeking damages solely from economic losses.  Plaintiffs do not allege that any of their injuries are accompanied by either personal injury or physical injury to property.  The Missouri economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses when no "harm to person or damage to property" is alleged.  *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905-06 (8th Cir. 2013); *see also Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. Ct. App. 2014) (same).

Unsurprisingly, courts in other data breach cases have routinely dismissed negligence and negligence *per se* claims under the applicable economic loss rule.  *See, e.g., In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 529-31 (N.D. Ill. 2011) (applying economic loss rule in retailer data breach); *In re Sony Gaming Networks and Customer Data Security Breach Litig.*, 996 F. Supp. 2d 942, 967, 973 (S.D. Cal. 2014) (applying California and Massachusetts economic loss rules).  Because the alleged potential damages sought by Plaintiffs would be solely from economic losses, the economic loss rule bars them.[5]

### B.  Plaintiffs Fail to Establish that EWS Owed Plaintiffs A Duty As Required To State A Claim For Negligence.

To state a claim for negligence, Plaintiffs must show that EWS owed a duty to Plaintiffs "to protect [them] from injury."  *See Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 131 (Mo.

---

[5] Even though this Court is not required to conduct a rigorous choice of law analysis at this stage, Plaintiffs' negligence claims are also barred by the economic loss rule under the state law alleged in Plaintiff Yochanan's alternative Georgia "sub-class."  *See Bates & Assocs., Inc. v. Romei*, 426 S.E.2d 919, 922 (Ga. Ct. App. 1993) ("[C]ourts adhere to the rule that purely economic interests are not entitled to protection against mere negligence."); *Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (applying Georgia economic loss rule in data breach suit).

Ct. App. 1993).  In the data breach context, this Court has declined to recognize a duty to protect personal information beyond that specifically imposed by the Missouri legislature.  *Amburgy*, 671 F. Supp. 2d at 1055 (refusing to create a duty when no cause of action existed under the Missouri legislature and noting that "[t]he Court will not create a claim where one does not exist").  And no Missouri court has recognized a common law duty to safeguard personal information from third-party criminal actions.  Indeed, other courts, including those in Georgia, faced with negligence claims brought following data breaches have refused to recognize such a common law duty.  *See, e.g., McConnell v. Dep't of Labor*, A16A0655, 2016 WL 3361735, at *3-4 (Ga. Ct. App. June 16, 2016) (holding that no Georgia case has recognized a "duty to safeguard and protect the personal information of another," and that the Georgia data breach notification statute, O.C.G.A. § 10-1-910 et seq., "cannot serve as the source of a statutory duty to safeguard personal information"); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897-98 (N.D. Ill. 2012) (declining to recognize a new common law duty to safeguard sensitive information); *Citizens Bank of Pa. v. Reimbursement Techs., Inc.*, No. 12-1169, 2014 WL 2738220, at *3-4 (E.D. Pa. June 17, 2014) (concluding plaintiffs failed to allege any common law duty to secure customers' personal information, stating that "[d]efendants are generally not held liable for wrongful acts by intervening third parties").

Plaintiffs provide no basis for the Court to divine a duty on these facts.  EWS provides the W2 eXpress service to and contracts with *Kroger*, not Kroger's employees, such as Plaintiffs Grant and Yochanan.  Plaintiffs fail to plead how a duty could exist between themselves and EWS.  Further, Plaintiffs' contention that EWS breached a duty by "failing to implement standard industry best practices and protocols" is insufficient because commercial or industry standards do not create a legal duty to Plaintiffs.  *See Willingham¸* 2013 WL 440702, at *19

16

(rejecting similar argument based on industry standards).  In addition, this Court has previously held that no common law duty to provide notice of a data breach exists under Missouri law.  *See Amburgy*, 671 F. Supp. 2d at 1055; *see also In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 613 F. Supp. 2d 108, 124 (D. Me. 2009) (Maine common law recognizes no duty to "advise customers of the theft").[6]

As a result, Plaintiffs do not, and cannot, allege any recognized duty on the part of EWS to protect their information from the acts of third-party criminals.  This Court should dismiss the Plaintiffs' negligence claims.

### C.  Plaintiffs Fail to Allege Compensable Damages.

To establish a claim for negligence in Missouri, a plaintiff must demonstrate "actual damages to the [plaintiff's] person or property." *Amburgy*, 671 F. Supp. 2d at 1054; *see also MCI Commc'ns Servs., Inc. v. CMES, Inc.*, 728 S.E.2d 649, 652 (Ga. 2012) ("An injury to a person or damage to property is required for a tort to be actionable").  A plaintiff must show "some harm for which damages can be reasonably assessed." *Amburgy*, 671 F. Supp. 2d at 1054. As discussed above, *supra* at Section I(B), the nature of Plaintiffs' alleged injuries that "may" occur in the future is speculative and hypothetical and Plaintiffs fail to allege any actual damage to their "person or property."  This Court has specifically held that such speculative damages "cannot reasonably be assessed for a hypothetical harm which may (or may not) come to plaintiff in the future" and cannot support a claim for negligence. *Id.* at 1055 ("[b]ecause the Complaint fails to plead harm resulting in compensable damage to plaintiff, plaintiff's claim of negligence must be dismissed for failure to state a claim"); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634-35 (7th Cir. 2007) (dismissing negligence claim in data breach suit because "the harm

---

[6] Nor have Plaintiffs adequately alleged how a "special relationship" or "independent duties under state laws" create such a duty. *See, e.g., Yochanan* Compl. ¶¶ 56-57.

caused by identity information exposure, coupled with the attendant costs to guard against identity theft" is insufficient to state a claim for negligence).  Because Plaintiffs fail to allege any "actual" damages that are compensable under a theory of negligence, their claims fail and should be dismissed.

### D.  Plaintiff Yochanan Does Not Identify Any Statute That Supports His Negligence *Per Se* Claim.

Plaintiff Yochanan alleges that EWS violated the prohibition on "unfair … practices in or affecting commerce" in Section 5 of the FTC Act, 15 U.S.C. § 45, and is thus liable for negligence *per se*.  Yochanan Compl. ¶¶ 66-77.  But Section 5 of the FTC Act is not a statute on which negligence *per se* may be premised under Missouri law.  Under Missouri law, the "test to determine whether a violation of a statute may constitute negligence per se depends on legislative intent."  *Lowdermilk v. Vescovo Building and Realty Co.*, 91 S.W. 3d 617, 628-29 (Mo. Ct. App. 2002) ("[n]egligence *per se* arises where the legislature pronounces in a statute what the conduct of a reasonable person must be . . . and the court then adopts the statutory standard of care").  Missouri courts have consistently held that the doctrine of negligence *per se* is ordinarily based on a class of "safety statutes" and has "traditionally arisen in cases involving personal injury and physical injury to property," *not* cases involving "damage to economic interests" such as Plaintiffs' Complaints here.  *Id.* at 628 (holding that a statute regulating disclosures by real estate brokers does not provide a basis for a claim for negligence *per se* under Missouri law).

Section 5 of the FTC Act is not within the class of statutes Missouri courts have recognized to include a claim for negligence *per se*.  No court has recognized a claim for negligence *per se* based on Section 5 and indeed, it does not even provide for a private cause of action.  *See FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 970 (N.D. Ill. 2006); *Holloway v. Bristol-*

*Myers Corp.*, 485 F.2d 986, 997 (D.C. Cir. 1973).  Plaintiff Yochanan has put forth no

allegations that support a claim for negligence *per se*.[7]

### III.    PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT FAIL.

To state a claim for unjust enrichment, Plaintiffs must show that "(1) [she] conferred a

benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant

accepted and retained the benefit under inequitable and/or unjust circumstances."  *Howard v.

Turnbull*, 316 S.W.3d 431, 436 (Mo. App. Ct. 2010).  Plaintiffs, who are Kroger employees and

have no contractual relationship with EWS, fail to state a claim for unjust enrichment against

EWS because (1) Plaintiffs did not directly confer a benefit on EWS; and (2) to the extent any

benefit was conferred on EWS, a contract governs the relationship between Kroger and EWS,

thus barring a claim for unjust enrichment.

*First*, based on the allegations of Plaintiffs' Complaint, Plaintiffs fail to plead that they

conferred any benefit on EWS.  As acknowledged by the Complaints, EWS provides products

and services to and contracts with employers, like Kroger, who in turn allows employees, such as

Plaintiffs, to use such products and services as part of their employment.  *Grant* Compl. ¶ 1; *see

also Yochanan* Compl. ¶ 1.  In other words, the "client" of EWS as alleged in Plaintiffs'

Complaints is Kroger, *not* Plaintiffs.  *Id.* ¶ 8 ("The W-2Express system is a database maintained

by [EWS] where an employee of a client organization may access his or her W-2 online."); ¶ 31

(EWS's "clients' employees").  Yet Plaintiffs bring claims for unjust enrichment against EWS

claiming "Plaintiff and members of the Class conferred an economic benefit on Defendant by

purchasing and using Defendant's products and services in the course of their employment with

---

[7] Nor would Plaintiff Yochanan's allegations give rise to a claim for negligence *per se* under
Georgia law because Section 5 of the FTC Act does not impose a clear and concrete duty or
standard of conduct.  *See Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013)
(there must be an "alleged breach of a legal duty with some ascertainable standard of conduct.").

Kroger." *Id.* ¶ 60.  Plaintiffs purchased no such products or services.[8]  Plaintiffs' allegations are mutually contradictory and self-destructive; thus, no cause of action is stated.  *DeVault v. Truman*, 194 S.W.2d 29, 32 (Mo. 1946).

"The Missouri Supreme Court has held that to state a claim for unjust enrichment, a plaintiff must allege that a benefit was conferred on the defendant by that particular plaintiff." *Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*, No. 2:08-cv-04148-NKL, 2009 WL 2391769, at *4 (W.D. Mo. Aug. 3, 2009) (emphasis added).[9]  In *Speaks*, the Western District of Missouri dismissed a claim for unjust enrichment when "none of Plaintiffs' money or services are alleged to have passed from them directly to any Wulf Defendant." *Id.*  The money, or "benefits at issue," were paid by individuals to an entity who then hired the defendant at issue in the case for certain advice.  *Id.*  Similarly, if the party that received the alleged benefits is not a party to the action before the court, no benefit is conferred between the parties.  *Am. Civil Liberties Union v. Miller, III*, 803 S.W.2d 592, 595 (Mo. 1991) (when the alleged benefit is conferred not on defendant, but on a third party, plaintiff fails to allege an essential element of the tort of unjust enrichment that a benefit be conferred upon the defendant by the plaintiff).

In *Wiles v. Southwestern Bell Tele. Co.*, the Western District of Missouri dismissed a claim for unjust enrichment with allegations very similar to Plaintiffs' here.  A putative class brought claims against defendant AT&T relating to the acquisition of plaintiffs' personal driver's

---

[8] Plaintiffs allege that "they would not have purchased or used Defendant's products and services" had they "known that Defendant would not adequately secure their personal and [W-2] information." *Grant* Compl. ¶ 63; *see also Yochanan* Compl. ¶ 89.  Again, EWS contracts with and provides its services to Kroger, not Plaintiffs, and Plaintiffs did not, and have not alleged, that they purchased the products and services directly from EWS.

[9] Georgia law also requires an alleged benefit to be conferred directly to state a claim for unjust enrichment. *See Brown v. Cooper*, 514 S.E.2d 857, 860 (Ga. Ct. App. 1999) (holding that a claim for unjust enrichment must be brought by the party who actually conferred the benefit at issue).

license data.  2010 WL 1463025, at * 1.  The plaintiff claimed that AT&T was unjustly enriched

by receiving and using "Plaintiffs' personal information."  *Id.* at *4.  The Court held that the

defendant AT&T obtained the information from the Missouri Department of Revenue, not from a

party before the court as required for an unjust enrichment claim.  *Id.*  The Court noted that "it is

the contract-like nature of the relationship of the parties that gives rise to unjust enrichment

claims" and no such relationship between the parties was indicated by the complaint when the

particular plaintiff did not confer a benefit on that defendant.  *Id.*; *see also Wiles v. Worldwide

Info., Inc.*, 809 F. Supp. 2d 1059, 1083 (W.D. Mo. 2011) (in similar litigation, dismissing claim

for unjust enrichment and holding that "[a]ny benefit enjoyed by Defendant was conferred by the

State of Missouri, not Plaintiffs" when the defendant obtained personal driver's license

information from the state of Missouri).  Because Plaintiffs fail to plead that they conferred a

benefit on *EWS*, their claims for unjust enrichment fail and should be dismissed.

*Second*, to the extent any benefit was conferred on EWS by Kroger, a contract governs

the relationship between Kroger and EWS, thus barring a claim for unjust enrichment.  "If the

plaintiff has entered into an express contract for the very subject matter for which he seeks

recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express

terms of the contract."  *Howard*, 316 S.W. 3d at 436; *see also Speaks*, 2009 WL 2391769, at *4

("[t]he unjust enrichment claim is unavailable when the alleged benefit conferred is the subject

matter of a contract.").

## IV.     PLAINTIFF YOCHANAN FAILS TO STATE A CLAIM UNDER THE GEORGIA DATA BREACH STATUTE.

Plaintiff Yochanan alleges that EWS violated the "Georgia Security Breach Notification

Statute," Ga. Code Ann. § 10-1-912, *et seq.* by "failing to disclose the Data Breach in a timely

and accurate manner," and thus causing Plaintiff Yochanan damages.  *Yochanan* Compl. ¶¶ 93-

102.  As an initial matter, the Georgia data breach statute does not provide for a private right of action, and thus Plaintiff Yochanan cannot assert a claim against EWS pursuant to it.  *See* Ga. Code Ann. §§ 10-1-910-915; *see also McConnell*, 2016 WL 3361735, at *3-4 (parties recognizing that Georgia data breach statute does not create a private cause of action and court holding that the statute does not create a duty to safeguard personal information under a common law negligence theory).  Other courts, including those in Missouri, have recognized that certain state data breach statutes do not provide for private causes of action.  *See Amburgy*, 671 F. Supp. 2d at 1055 (Missouri data breach notification law does not provide for a private cause of action for failure to provide adequate and timely notice nor is there a claim under a theory of negligence); *Pisciotta* , 499 F.3d at 637 (dismissing data breach notification claim because statute did not provide for a private right of action).

Further, as previously discussed, the Complaint is void of any actions taken or injuries suffered as a result of the purportedly delayed notification Plaintiffs received from their employer, Kroger, further warranting dismissal of the claim.  *See Khan v. Children's Nat'l Health Sys.*, No. TDC-15-2125, 2016 WL 2946165, at *6 (D. Md. May 19, 2016) ("Khan's claim that CNHS impermissibly delayed notifying her of the breach does not establish any injury, since Khan does not claim that the period during which she was unaware of the need to monitor for identity fraud resulted in any harm.").  Plaintiff Yochanan's claim under the Georgia data breach statute fails to state a claim and should be dismissed.

## V.   PLAINTIFF YOCHANAN'S CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF FAILS.

Plaintiff Yochanan's claims for equitable relief are duplicative and inconsistent with the remaining claims in his Complaint and should be dismissed.

### A.  Plaintiff Yochanan Fails to State a Claim for Injunctive Relief.

Plaintiff Yochanan asks the Court to issue "injunctive relief requiring [EWS] to employ adequate security protocols to protect the PII of Class Members in its possession." *Yochanan* Compl. ¶¶ 82-85.  Since a claim for injunctive relief is a remedy, not a separate cause of action, Plaintiff Yochanan's claim for injunctive relief should be dismissed.  *See Budach v. NIBCO, Inc.*, No. 2:14-cv-04324, 2015 WL 3853298, at *9 (W.D. Mo. June 22, 2015) ("there is no cause of action for 'injunction,' under either Missouri or federal law"); *Henke v. Arco Midcon, LLC*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) (injunctive relief cannot stand as a separate cause of action).

Additionally, Plaintiff Yochanan fail to establish that inadequate remedies at law exist.  An injunction is an "extraordinary and harsh remedy and should not be granted when there is an adequate remedy at law."  *Sales Resource, Inc. v. Alliance Foods, Inc.*, Nos. 4:08cv0732 TCM, 4:09cv0666 TCM, 2010 WL 5184943, at *32 (E.D. Mo. Dec. 15, 2010).  "Generally, the phrase 'adequate remedy at law' means that [an injunction is available when] damages will not adequately compensate the plaintiff for the injury or threatened injury."  *Id.; see also Alternative Medicine and Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:14 CV 1469 CDP, 2014 WL 4988199, at *6 (E.D. Mo. Oct. 7, 2014) ("[w]hen there is an adequate remedy at law, a preliminary injunction is not appropriate").  Plaintiff's entire Complaint contradicts that very assertion.  Plaintiff brings claims under common law theories and state statutes, all of which require actual and concrete damages to state a claim.  Plaintiff cannot have it both ways.  Damages cannot be alleged to be actual and concrete on the one hand and inadequate on the other.  *See Alliance Foods*, 2010 WL 5184943, at *33 (holding that plaintiffs were not entitled to injunctive relief when adequate remedies at law exist under plaintiffs' claims).

**B.  Plaintiff Yochanan Fails to State a Claim for Declaratory Relief.**

Plaintiff Yochanan asks the Court to "enter a judgment" under the Declaratory Judgment Act, declaring that EWS "owed and continues to owe a legal duty to secure Class Members' personal and financial information," "breached" the duty, caused the data breach, and failed to disclose the breach.  *Yochanan* Compl. ¶¶ 79-81.

As an initial matter, Plaintiff Yochanan's claim for declaratory relief fails because it is duplicative of his other claims.  *See Morningstar, LLC v. Hardee's Food Systems, Inc.*, No. 4:08CV794 TIA, 2009 WL 36406, at *4 (E.D. Mo. Jan. 6, 2009) (dismissing claim for declaratory relief when duplicative of other claims and holding that "addressing such count would serve as a 'needless waste of judicial resources'").  Additionally, Plaintiff Yochanan's claim focuses on alleged past wrongs, rather than future harm, thus warranting dismissal of the claim.  *See, e.g., Yochanan* Compl. ¶¶ 81-82 (Plaintiff Yochanan seeking a declaration that EWS "owed" a legal duty and breached the legal duty "by failing to employ reasonable security measures"); *see Reid v. BCBSM, Inc.*, 984 F. Supp. 2d 949, 953-54 (D. Minn. 2013) (dismissing claim for declaratory relief when alleged injury in past and "there is no threat of ongoing or future harm").

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Complaints should be dismissed for lack of Article III standing.  Independently, Plaintiffs' Complaints should also be dismissed for failure to state a claim upon which relief can be granted.

24

Respectfully submitted,

Date: August 12, 2016

/s/ Phyllis B. Sumner
Phyllis B. Sumner (admitted *pro hac vice*)
Elizabeth D. Adler (admitted *pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Tel.:  (404) 572-4600
Fax:  (404) 572-5140
psumner@kslaw.com
eadler@kslaw.com

Nicholas A. Oldham (admitted *pro hac vice*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW
Washington, D.C.  20006
Tel.:  (202) 737-0500
Fax:  (202) 626-3737
noldham@kslaw.com

Peter Corsale
**POLSINELLI PC**
100 S. Fourth Street
Suite 1000
St. Louis, MO 63102
Tel:  (314) 889-8000
Fax:  (314) 231-1776
pcorsale@polsinelli.com

*Counsel for Defendant Equifax Workforce
Solutions a/k/a TALX Corporation*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on August 12, 2016, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Norman E. Siegel
J. Austin Moore
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO  64112
Tel:  (816) 714-7100
Fax:  (816) 714-7101
siegel@stuevesiegal.com
moore@stuevesiegel.com
vahle@ stuevesiegal.com

Carl Malmstrom
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
One South Dearborn St., Suite 2122
Chicago, IL  60603
Tel:  (312) 984-0000
Fax:  (312) 212-4401
malmstrom@whafh.com

*Attorneys for Plaintiff Tina Grant*

John Yanchunis
**MORGAN & MORGAN, PA**
201 N. Franklin St., 7th FL
Tampa, FL 33602
Tel:  (813) 223-5505
Fax:  (813) 275-9205
jyanchunis@forthepeople.com

Tami Hamm
**THE HAMM LAW FIRM, LLC**
8630 Delmar Blvd.
Suite 120
St. Louis, MO 63124
Tel:  (314) 439-1046
tamihamm@gmail.com

*Attorneys for Plaintiff Betzalel Yochanan*

I further certify that on August 12, 2016, the forgoing was mailed via First Class U.S. Mail, postage prepaid, to the following:

Thomas Burt
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY  10016
Tel:  (212) 545-4600
Fax:  (212) 545-4653
burt@whafh.com

Theodore B. Bell
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
One South Dearborn St., Suite 2122
Chicago, IL  60603
Tel:  (312) 984-0000
Fax:  (312) 212-4401
tbell@whafh.com

*Attorneys for Plaintiff Tina Grant*

Rachel Soffin
**MORGAN & MORGAN, PA**
201 N. Franklin St., 7th FL
Tampa, FL 33602
Tel:  (813) 223-5505
Fax:  (813) 222-2434
rsoffin@forthepeople.com

Michael A. Galpern
Andrew P. Bell
James A. Barry
**LOCKS LAW FIRM, LLC**
801 N. Kings Highway
Cherry Hill, New Jersey 08034
Tel: (856) 663-8200
Fax: (856) 661-8400

*Attorneys for Plaintiff Betzalel Yochanan*

*/s/ Phyllis B. Sumner*
Phyllis B. Sumner

27